UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED RENTALS, INC. and ) <br> UNITED RENTALS (NORTH AMERICA), INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> EVAN FREY, ) <br> ) <br> Defendant. ) <br> ) | <br><br><br><br><br><br>CIVIL ACTION NO.<br><br><br><br><br>OCTOBER 15, 2010 |

## COMPLAINT

Plaintiffs, United Rentals, Inc., United Rentals (North America), Inc., and their affiliates (collectively "United" or "Plaintiff"), by and through United's undersigned attorneys, and for its Complaint for injunctive and other relief against Defendant, Evan Frey ("Frey" or "Defendant"), hereby state and allege the following:

**Nature of Action**

1. This action is based on the willful breach of a confidentiality and non-competition agreement; and sets forth claims for breach of contract, violation of the Uniform Trade Secrets Act, and tortious interference with economic advantage and existing business relationships.

**Parties, Jurisdiction and Venue**

2. United Rentals, Inc. and United Rentals (North America), Inc. are Delaware corporations with their principal places of business in Greenwich, Connecticut. United is engaged in the business of renting and selling equipment and merchandise to the commercial and general public throughout the United States, including Indiana. United rents and sells, among other things, trench shoring equipment

such as aluminum trench shields, steel trench shields, manhole shields, bedding boxes, crossing plates, pipe plugs, slide rail and build-a-box systems, among other items, and United continuously develops new products.  Significantly, United has developed and provides to its customers certain trench safety training programs.   Additionally, and at all relevant times thereto, United operated a branch facility in Indianapolis, Indiana ("Indianapolis Branch").

3. Upon information and belief, at all times relevant hereto and up to October 6, 2010, Frey was a citizen of Indiana and an employee of United.

4. Jurisdiction over this matter arises under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction).  The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Frey contractually submitted to the exclusive jurisdiction of this Court when he agreed to the terms of his confidentiality and non-competition agreement (the "Non-Compete Agreement") with United dated December 17, 2007.  The Non-Compete Agreement provides, in relevant part, the following:

> <u>Consent to Personal Jurisdiction</u>.  Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or federal courts in the District of Connecticut, and Employee hereby consents that such courts be granted exclusive jurisdiction for such purpose.

The claims contained herein arise, in part, out of the terms of the Non-Compete Agreement referenced above.

6. Venue is proper in this Judicial District under 28 U.S.C. § 1391(a)(2) & (a)(3) because the intellectual property that is the subject of the action is derived from and/or maintained in this district and because Frey contractually submitted to the

exclusive jurisdiction of this Court when he agreed to the terms of the Non-Compete Agreement.

**General Allegations**

7.  At all relevant times up until October 6, 2010, Frey was an employee of United. During the course of his employment, Frey served as an Outside Sales Representative. Frey operated out of United's Indianapolis Branch.

8.  United's Indianapolis Branch generates significant revenues primarily from the rental and sale of trench safety equipment to its customers. Moreover, the Indianapolis Branch further generates revenues by providing trench safety classes, including 1) Competent Person (Excavation Safety Awareness) Class, and 2) Confined Space Entry Class (the "Trench Safety Courses"). These training classes are taught to United customers by qualified/trained United Outside Sales Representatives. During his employment, Frey contributed towards the revenues of the Indianapolis Branch by, among other things, teaching the Trench Safety Courses.

9.  United has invested significantly in the Trench Safety Courses and provides training to certain Outside Sales Representatives to qualify them to teach these courses to United customers. In this regard, United has developed certain training materials for use in the Trench Safety Courses. These materials were developed by United. United sends its Outside Sales Representatives, such as Frey, to trainer classes to develop their training skills in this regard. Only after an Outside Sales Representative is qualified to teach the Trench Safety Courses are they provided access to United's training materials related to these programs.

10. As an Outside Sales Representative with United, Frey had controlled access to certain of United's trade secrets. United's trade secrets include, but are not limited to, such things as: (1) gross rental data; (2) budget processes from market areas and rental projections; (3) product development and marketing plans and strategies; (4) details of contracts; (5) actual and prospective customer data, including identities of United customers (i.e., United's customer list and customer contacts); (6) pricing and discount information; (7) cost information, including special programs and discount structures negotiated with particular equipment vendors; (8) information on the sources and nature of financing United is able to secure for its customers; and (9) fleet information, including its make-up, cost and utilization.

11. United's trade secrets and other confidential information are shared with employees only as necessary, and only to those who agree to keep it confidential.

12. None of the foregoing trade secrets discussed above was known or open to the public and United undertook reasonable measures to keep the trade secrets confidential and out of the public domain.

**Frey's Agreement**

13. In order to protect its customer goodwill, confidential information, and trade secrets, United had requested that Frey enter, and Frey agreed to enter, into the Non-Compete Agreement.

14. In this regard, Frey agreed to sign the Non-Compete Agreement that contained a proscription against divulging confidential information.

15. The Non-Compete Agreement contained the following provisions, to which Frey agreed, that outlined and defined "Confidential information" as follows:

4

  (h) "Confidential Information" shall mean all information which is valuable to [United] and not generally known to the public, and includes, but is not limited to:

    (i) business, strategic and marketing plans and forecasts, and the past results of such plans and forecasts;

    (ii) business, pricing and management methods;

    (iii) employee handbooks, operations manuals and best practices memoranda;

    (iv) finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;

    (v) names of, arrangements with, or other information relating to, [United's] customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with [United] or who are prospects for business relationships with [United];

    (vi) technical information, work product and know-how;

    (vii) cost, operating, and other management information systems, and other software and programming;

    (viii) the name of any company or business, any part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects; and

    (ix) the Company's Trade Secrets.

  16. The Non-Compete Agreement also contained a restrictive covenant, which Frey accepted, that restricted Frey from, among other things, competing directly or

5

indirectly with United, within a limited Restricted Area, during his employment and 12 months thereafter.  Specifically, the Non-Compete Agreement provides:

    (a)    During [Frey's] employment by the Company and for a period of 12 months immediately following the termination of employment for any reason whatsoever, (whether for cause, by resignation or otherwise) Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):

        (i)    in any Restricted Area be employed, retained, or otherwise provide any consulting, brokerage, contracting, sales, financial or other services or assistance to  any person or entity who or which then competes with the Company to any extent.   For purposes of this Agreement, the terms "Restricted Area" shall mean the area within:

            (a)    a 50 mile radius from any and all Company locations for which Employee performed services, or had management or sales responsibilities, at any time during the 24 month period immediately preceding the termination of Employee's employment with the Company; and

            (b)    any geographic area for which Employee had management or sales responsibilities  at any time during the 24 month period immediately preceding the termination of Employee's employment with the Company;

        (ii)    solicit the business of, or call upon, any person or entity, or affiliate of any such person or entity,  who or which is or was a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company or who was a prospect for a business relationship with the Company, at any time during the period of Employee's employment, for the purpose of providing or obtaining any product or service reasonably deemed competitive with any product or service then offered by the Company;

        (iii)    approve, solicit or retain, or discuss the employment or retention (whether as an employee, consultant or other otherwise) of any person who was an employee of the Company at any time during the one-year period preceding the termination of Employee's employment by the Company;

6

    (iv)  solicit or encourage any person to leave the employ of the Company;

      \*  \*  \*  \*  \*  \*  \*  \*

    (vi)  own any interest in or be employed by or provide any services to any person or entity, which engages in any conduct, which is prohibited to Employee under this Section[.]

**Breaches/Tortious Conduct of Frey**

  17.  Frey's separation date from United was October 6, 2010. At the time of his resignation, among other times, United reminded Frey of his continuing obligations under his Non-Compete Agreement.

  18.  Upon information and belief, Frey has now begun competing within the Restricted Area. Specifically, Frey has obtained employment with MacAllister Machinery Company, Inc. ("MacAllister") in Indianapolis, at the epicenter of the Restricted Area.

  19.  Additionally, United has been made aware that Frey, on behalf of himself and MacAllister, has called upon and solicited United customers that he had previous dealings with while employed by United.

  20.  United has further been made aware that Frey has contacted certain United employees in an effort to solicit and/or encourage them to terminate their employment at United.

  21.  Upon information and belief, MacAllister is a direct competitor of United and is operating within the Restricted Area and/or targeting United customers.

  22.  Upon information and belief, in engaging in this activity, Frey has used or inevitably will use the valuable confidential trade secrets of United and/or provide same

to MacAllister. Indeed, United has information that Frey has already begun visiting, contacting, and/or soliciting United's customers whom he had previous dealings with while employed by United, for the benefit of MacAllister.

23. Frey committed the acts alleged herein with knowledge that his conduct would harm the financial interest of United.

24. Frey committed the acts alleged herein for his own benefit and the benefit of MacAllister.

**COUNT I – Breach of the Agreement**

25. United realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 24 above as though fully set forth herein.

26. United and Frey exchanged valuable consideration in support of the Non-Compete Agreement.

27. United duly performed all of its obligations pursuant to the Agreement.

28. United is informed and believes that in his new position, Frey has actively competed with United in soliciting United customers and/or being competitively employed within the Restricted Area, utilizing United's trade secrets and/or confidential information in conjunction with his efforts. Frey has further made efforts and has successfully solicited at least one United employee, encouraging that individual to join MacAllister despite Frey's obligations under the Non-Compete Agreement.

29. Frey's conduct of being competitively employed within the Restricted Area, and/or in soliciting United customers/employees following his employment with United, constitutes a material breach of the Non-Compete Agreement, including the restrictive covenants contained and referenced therein.

30. Frey's conduct set forth in this Complaint further constitutes a material breach of the implied covenant of good faith and fair dealing in the Non-Compete Agreement.

31. Given his position as an Outside Sales Representative with United, Frey was privy to confidential trade secrets, including, but not limited to, pricing, customer contacts and information, which he will inevitably disclose to and/or use on behalf of MacAllister.

32. Upon information and belief, after leaving United, and thereafter, in violation of the Non-Compete Agreement, Frey has provided MacAllister with confidential and/or trade secrets and/or Frey has used said information in an effort to compete with United on behalf of MacAllister.

33. Frey's conduct, all while using United's confidential trade secrets, is a material breach of the Non-Compete Agreement, including, but not limited to, the restrictive covenants.

34. As a proximate result of Frey's wrongful conduct, United has suffered and will continue to suffer irreparable harm and money damages.

35. As a result of the foregoing activities, Frey is liable to United for breach of contract. United has suffered, and will continue to suffer, substantial and irreparable damages to its business and customer good will, as well as losses in an amount in excess of $75,000.00, but not yet fully ascertained, and which will be further determined according to proof.

36. United has no adequate remedy at law for Frey's willful breach of the Non-Compete Agreement and restrictive covenants set forth or incorporated therein, in that:

(i) United's trade secrets are unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom is continuing; and (iv) Defendant acknowledged in writing that a breach of the Non-Compete Agreement would constitute irreparable harm to United.

**COUNT II -   Trade Secret Misappropriation in Violation of the Uniform Trade Secrets Act**

37.     United realleges and reincorporates herein by reference the allegations contained in Paragraphs 1 through 36 above as though fully set forth herein.

38.     As an Outside Sales Representative for United, Frey had access to confidential information, such as the following:

- United's confidential customer lists that are not readily ascertainable from public sources.  United spent considerable time, energy and money cultivating these customers.

- United's confidential financial information and cost and profit margins. These figures are not available to the public and are held in confidence by United.

- United's cost information and discount information from certain vendors. United has been able to negotiate special terms with vendors that are not readily ascertainable by competitors and are terms that are kept in confidence by United.

- United's fleet information, including its make-up, cost and utilization.  This information is not available to the public and is held in confidence by United.

- United's product development and marketing plans and strategies.

39.     The aforementioned trade secrets are not known to all United employees, nor are they known to those working in the industry.  United's trade secrets were

conveyed confidentially to Frey, as necessary, in order to allow Frey to fully carry out his job responsibilities on behalf of United.

40.     United took reasonable measures to keep the trade secrets confidential. As stated above, only certain employees had access to trade secrets. Trade secret information was provided only to those who, like Frey, agreed to keep such information confidential. Indeed, United required Frey to sign a confidentiality agreement protecting the integrity of this information.

41.     This information is highly valuable to United, and could enable United's competitors to challenge pricing and vendor relationships and/or steal private customer lists.

42.     United spent considerable sums of money acquiring, maintaining and guarding this information.

43.     Upon information and belief, Frey misappropriated United's trade secrets when he began soliciting customers, using his knowledge of whom to contact, their product and service demands, and United's preferential pricing and terms.

44.     Upon information and belief, Frey misappropriated United's trade secrets when he wrongfully used those trade secrets on his own behalf and on MacAllister's behalf, and when he, on information and belief, provided same with his knowledge of those trade secrets.

45.     There is a substantial threat that Frey will continue to use and disclose United's trade secrets in an effort to acquire United's customers for the benefit of his new employer and himself personally.

46. Frey willfully and maliciously misappropriated United's trade secrets, in that Frey intended to solicit customers for the benefit of MacAllister and his own personal financial interest, all to the detriment of United.

47. Frey's wrongful conduct is a violation of the Uniform Trade Secrets Act.

48. As a direct and proximate result of Frey's wrongful conduct, United has suffered and will continue to suffer irreparable damages and money damages.

49. As a direct result of Frey's willful conduct, United is entitled to punitive damages and attorneys' fees.

50. Based on Frey's unlawful acts as alleged herein, United is being irreparably harmed in that: (i) United's trade secrets are a unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom, is continuing; and, (iv) the Defendant acknowledged, in writing, that a breach of the Agreements would constitute irreparable harm to United.

**COUNT III -- <u>Tortious Interference With Prospective Economic Advantage and Existing Business Relationships</u>**

51. United realleges and reincorporates herein by reference the allegations of Paragraphs 1 through 50 above as though fully set forth herein.

52. This Count states a claim for relief against Frey for tortious interference with United's prospective economic advantage and existing business relationships with United's customers.

53. Economic relationships have existed between United and its customers and other entities, which have been advantageous to United.

54.  Being in the business of, among other things, renting and selling trench safety equipment and providing the Trench Safety Courses within Indianapolis and the surrounding area, United has developed valid and existing business relationships with hundreds of customers with the probability of future economic benefit for United.

55.  United's Indianapolis Branch facility historically generates revenues, which are a result of United's substantial time, effort, training and resources devoted to developing business relationships with its customers.

56.  As an Outside Sales Representative for United at the Indianapolis Branch, Frey was aware, and had knowledge of the existence of the relationships United enjoyed with its customers.

57.  Upon information and belief, in spite of this knowledge, Frey wrongfully interfered with United's prospective economic advantage and existing business relationships by using and/or disclosing United's trade secrets and proprietary information to MacAllister, and by soliciting customers, all in violation of the Agreements.

58.  Frey engaged in these acts with full knowledge and/or recklessness and want of ordinary care in that such acts or omissions would necessarily interfere with or disrupt the economic relationships that United enjoyed with its customers, and these acts demonstrate Frey's intentional or negligent conduct.

59.  Upon information and belief, Frey directly interfered with the economic relationships United enjoyed with its customers.

60.  If not for the conduct of Frey, United was reasonably certain to have entered into continued business relationships with its customers.

61. Frey's conduct was intentional and willful in that Frey intended to harm United's economic and financial interest.

62. Frey's conduct was wrongful and not justified, privileged or excusable.

63. As a direct and proximate result of Frey's wrongful conduct, United has suffered and will continue to suffer irreparable harm, as well as monetary damages insufficient to fully remedy United.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, **UNITED RENTALS, INC., and UNITED RENTALS (NORTH AMERICA) INC.,** respectfully request judgment in their favor and against Defendant **EVAN FREY** as follows:

1. That Defendant breached his Non-Compete Agreement with United and the restrictive covenants contained and/or incorporated therein.

2. That Defendant violated the Uniform Trade Secrets Act.

3. That Defendant tortiously interfered with United's prospective economic advantage and existing business relationships.

4. That the Court enter an Order, preliminarily and permanently enjoining Defendant, **EVAN FREY**, from violating the terms of the Non-Compete Agreement; from misappropriating, using, or disclosing United's trade secrets; and from tortiously interfering with United's business expectancies.

5. That the Court award United compensatory damages arising out of Defendant's unlawful conduct alleged herein.

6. That the Court award United punitive damages.

7. That the Court award United its attorneys' fees.

8. That the Court award United punitive damages, attorneys' fees, expenses, interest, and costs, pursuant to the Non-Compete Agreement and/or common law.

9. That the Court impose a constructive trust and disgorgement of all compensation and other benefits which Defendant has derived or will derive as a result of his violation of the Non-Compete Agreement.

10. That the Court grant United such additional relief as is just and proper.

Dated this 15th day of October, 2010.

> THE PLAINTIFFS
> UNITED RENTALS, INC. and
> UNITED RENTALS (NORTH AMERICA), INC.
>
>
> By: _____/s/_____
>     Brian C. Roche – ct 17975
>     Gerald C. Pia, Jr. – ct 21296
>     Roche Pia, LLC
>     Two Corporate Drive, Suite 248
>     Shelton, CT 06484
>     Phone: (203) 944-0235;
>     Fax: (203) 567-8033
>     E-mail: broche@rochepia.com
>             gpia@rochepia.com