UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                          |   |                          |
|--------------------------|---|--------------------------|
|                          | : |                          |
| UNITED RENTALS, INC. and | : |                          |
| UNITED RENTALS (NORTH    | : |                          |
| AMERICA), INC.           | : |                          |
|                          | : |                          |
| v.                       | : | CIV. NO. 3:10CV1628 (HBF) |
|                          | : |                          |
| EVAN FREY                | : |                          |
|                          | : |                          |
|                          | : |                          |

RULING ON MOTION FOR PRELIMINARY INJUNCTION

Plaintiff United Rentals, Inc. and United Rentals (North
America), Inc., ("United") commenced this suit against its former
employee, Evan Frey ("Frey"), on October 15, 2010, alleging
willful breach of confidentiality and non-compete provisions
contained in Frey's Employment Agreement ("Agreement").  It sets
forth claims for breach of contract, violation of the Connecticut
Uniform Trade Secrets Act ("CUTSA"), and tortious interference
with economic advantage and existing business relationships.
United seeks a preliminary injunction to preclude Frey from
improperly competing with United, and from disclosing United's
trade secrets and confidential information.

For the reasons that follow, United's Motion for Preliminary
Injunction **[Doc. #10]** is **GRANTED.**

1

I. <u>Findings of Fact</u>

Based on the credible testimony, the exhibits, and the entire record developed during the evidentiary hearing on February 9, 2011, the Court finds the following facts established for the purposes of the injunction proceedings.[1]

United Rentals, Inc. is a Delaware corporation, with headquarters in Connecticut and offices nationwide, which rents and sells equipment and merchandise to the commercial and general public throughout the United States, including Indiana.[2] Compl. ¶2. Evan Frey was hired by United as an Outside Sales Representative in December 2007, operating out of United's Indianapolis Branch. Compl. ¶7. During his employment, Frey sold trench shoring equipment and conducted trench shoring safety training programs. Compl. ¶8. Prior to his employment with United, Frey had no experience selling trench shoring products. [Pl. Ex. 5]. He received all his sales and product training in the trench shoring business from United. United provided Frey

_____

[1]Todd Hayes, Midwest Trench District Manager for United Rentals, and defendant Evan Frey testified at the hearing. The facts are for the most part undisputed. Defendant does not dispute that he signed the Employment Agreement. He does not dispute engaging in conduct that violates the Agreement. Rather, defendant argues that the Employment Agreement is unreasonable and thus unenforceable.

[2]United rents and sells, among other things, trench shoring equipment such as aluminum trench shields, steel trench shields, manhole shields, bedding boxes, crossing plates, pipe plugs, slide rail and build-a-box systems. [Doc. #11 at 2].

with, among other things, extensive sales training and materials, time management training, trench shoring product training, introductions to vendors and customers and access to customer lists, contact information for decision-makers, detailed bidding and sales information including United's Rate Card, on-the-job sales ride-along training, and password protected access to information and materials located on the United, RentalMan/WYNNE[3] and Salesforce.com[4] computer systems. [Pl. Ex. 4]. Frey was United's only Outside Sales Representative in the Indiana Branch and United entrusted him with all its customer relationships.

United's offer letter dated December 4, 2007, states in part, "This offer is contingent upon . . . your prompt signing and returning of this offer letter, employment agreement and other enclosed documents." [Doc. #11]. Shortly after accepting the Outside Sales Position with United, Frey signed the offer letter and a written Employment Agreement.[5] [Pl. Ex. 6]. By

---

[3]RentalMan provided an Outside Sales Representative access to, among other things, trench shoring customer lists, contact information, address, names of decision makers, information on overall spending by day, week, month, access to the customers Dunn & Bradstreet rating, account payable terms at United Rentals. This program is password protected.

[4]Salesforce.com provided an Outside sales Representative access to, among other things, itineraries, projects and contact information, bidding. This program is password protected.

[5]Frey signed the offer letter on December 5, 2007. [Pl. Ex. 11]. The Agreement was entered into "as of" December 17, 2007, Frey's first day of employment. [Pl. Ex. 6].

affidavit and through his testimony, Frey stated that he was told "he could not begin work unless he signed" the Agreement, not given a reasonable amount of time to review the Agreement, and told that the Agreement was non-negotiable. [Frey Aff., Doc. # 22-2 at ¶¶6-9]. Frey testified that he did not try to negotiate any terms, did not seek time to confer with his attorney and did not speak to his supervisors about the Agreement.[6] The Agreement contains restrictive covenants preventing Frey from working for a competitor, soliciting United's customers and employees, or disclosing United's trade secrets and confidential information. In addition to the Agreement, United provided Frey with the Employee Handbook and Policy and Procedure Bulletin, defining trade secrets and  confidential information and counseling against unauthorized disclosure.[7] [Pl. Ex. 8, 9].

Frey resigned from his position with United on October 6,

---

[6]At the hearing, Hayes testified that he discussed the non-compete with Frey during the interview process. Frey testified that he was told sometime between his interview with Hayes and the December 4 Offer Letter that there would be an Employment Agreement. At the hearing, Frey could not recall when he was provided with a copy of the Agreement or the date he signed the Agreement.

[7]The Policy and Procedure Bulletin dated April 13, 2009, entitled "Confidential Information," states its purpose is "[t]o protect Confidential Information against unauthorized disclosure."  "Confidential Information shall mean all information which is valuable to the Company and not generally known to the public, and includes, but is not limited to, the following: . . . (b) Business, pricing and management methods and information." [Pl. Ex. 8].

2010, accepting employment with MacAllister Machinery Company, Inc. ("MacAllister"), in Indianapolis.  MacAllister is a direct competitor of United in the trench shoring equipment industry. Compl. ¶21.  MacAllister is located approximately five miles from United's Indianapolis Branch office. [Pl. Ex. 10]. Upon accepting employment, Frey immediately began calling on United's customers and suppliers, asking for their business and submitting bids on behalf of MacAllister. [Pl. Ex. 10, 13-14, 18-21, 23].  Frey testified that during his first week of employment, he provided MacAllister with a list of his "best" customers.  He stated he was assigned those "best" customers, even though some were located in his colleague's sales territory. [Pl. Ex 23]. Frey testified that since joining MacAllister, he has contacted United's  customers, regardless of whether the customer is located within the "restricted area" under his employment agreement, or whether MacAllister previously did business with the customer.  Frey testified that information on customers, bidding, margins, pricing, installation, and inventory should not be disclosed to a competitor.  Frey does not dispute that he is competing within the "Restricted Area" as defined in the Employment Agreement, soliciting United's customers, suppliers and United's employees and using United's "confidential information" and "trade secrets" as defined in the Employment Agreement. [Pl. Ex. 10, 13-14, 18-21, 23].

<u>The Employment Agreement</u>

At issue at the preliminary injunction phase are the non-compete and confidentiality provisions in the Employment Agreement.

Under Section One of the Agreement, Frey agreed to the following provision against divulging confidential information:

1. <u>Trade Secrets: Confidentiality and Company Property</u>. During and at all times after Employee's employment with the Company:

   (a) Employee will not disclose to any person or entity, without the Company's prior written consent, any Trade Secrets or other Confidential Information (as described below), whether prepared by Employee or others;

   (b) Employee will not use any Trade Secrets or other Confidential Information in order to solicit or call upon any person or entity;

   (c) Employee will not directly or indirectly use any Trade Secrets or other Confidential Information other than as directed by the Company in writing;

   (d) Employee will not, except in the furtherance of the business of the Company, remove any Trade Secrets or other Confidential Information from the premises of the Company without the prior written consent of the Company;

   (e) All products, correspondence, reports, records, charts, advertising materials, designs, plans, manuals, field guides, memoranda, lists and other property compiled or produced by Employee or delivered to Employee by or on behalf of the Company or by its customers (including, but no limited to, customers obtained by the Employee). whether or not Confidential Information, shall be and remain the property of the Company and shall be subject at all times to its direction and control;

   (f) Upon termination of employment for any reason whatsoever, or upon request at any time, Employee will promptly deliver to the Company all originals and copies (whether in note, memo or other document form or on video, audio, computer tapes, discs or otherwise) of all Trade Secrets or other Confidential Information, and all property identified in Section 2(e) above, that is in Employee's possession, custody or control, whether prepared by Employee or others;

[Doc. #14 (Agreement) §§2(a)-(f)].

Frey agreed to the following trade secrets and confidentiality provisions.

(g)   "Trade Secrets" shall mean all information not generally known about the business of the Company, which is subject to reasonable efforts to maintain its secrecy or confidentiality, and from which the Company derives economic value from the fact that the information is not generally known to others who may obtain economic value from its disclosure or use, regardless of whether such information is specifically designated as a trade secret under any applicable law.

(h)   "Confidential Information" shall mean all information which is valuable to the Company and not generally known to the public, and includes, but is not limited to:

(i)      business, strategic and marketing plans and forecasts, and the past results of such plans and forecasts;

(ii)     business, pricing and management methods;

(iii)    employee handbooks, operations manuals and best      practices memoranda;

(iv)     finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;

(v)      names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;

(vi)     technical information, work product and know-how;

(vii)    cost, operating, and other management information systems, and other software and programming;

(viii)   the name of any company or business, any part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated,

> > compiled or otherwise obtained with respect
> > to such candidate, business or potential
> > acquisition, or with respect to the potential
> > effect of such acquisition on the Company's
> > business, assets, financial results or
> > prospects; and
>
> > (ix)    the Company's Trade Secrets (note that some
> > of the information listed above may also be a
> > Trade Secret).

[Doc. #14 (Agreement) §§2(g) & (h)].

Frey agreed to a non-compete covenant, for a period of twelve (12) months from his last day of employment with United, which prohibits him (1) from working for any entity in competition with United within a limited, specifically-defined "Restricted Area"; and (2) from soliciting, accepting the business of, or calling upon United's customers. Specifically, the Agreement provides:

(a)    During Employee's employment by the Company and for a period of 12 months immediately following the termination of employment for any reason whatsoever, (whether for cause, by resignation or otherwise) Employee will not, directly or indirectly (whether through affiliates, relative or otherwise):

> (i)    in any Restricted Area, be employed, retained, or otherwise provide any consulting, brokerage, contracting sales, financial or other services or assistance to any person or entity who or which then competes with the Company to any extent. For purposes of this Agreement, the term "Restricted Area" shall mean the area within:
>
> > (A)    a 50 mile radius from any and all Company locations for which Employee performed services, or had management or sales responsibilities, at any time during the 24 month period immediately preceding the termination of Employee's employment with the Company; and
> >
> > (B)    any geographic area for which Employee had management or sales responsibilities at any time

during the 24 month period immediately preceding the termination of Employee's employment with the Company;

(ii) solicit the business of, or call upon, any person or entity, or affiliate of any such person or entity, who or which is or was a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company or who was a prospect for a business relationship with the Company at any time during the period of Employee's employment, for the purpose of providing or obtaining any product or service reasonably deemed competitive with any product or service then offered by the Company;

(iii) approve, solicit or retain, or discuss the employment or retention (whether as an employee, consultant, or otherwise) of any person who was an employee of the Company at any time during the one-year period preceding the termination of Employee's employment by the Company;

(iv) solicit or encourage any person to leave the employ of the Company;

(v) call upon or assist in the acquisition of any company which was, during the term of this Agreement, either called upon by an employee of the Company or by a broker or other third party, for possible acquisition by the Company or for which an employee of the Company or other person made an acquisition analysis for the Company; or

(vi) own any interest in or be employed by or provide any services to any person or entity, which engages in any conduct, which is prohibited to Employee under this Section 3(a).

(b) Employee shall be deemed to be employed or retained in the Restricted Area if Employee has an office in the Restricted Area or if Employee performs any duties or renders any advice with respect to any facility or business in the Restricted Area.

[Doc. #14 (Agreement) §§3(a) & (b)].

Under §3(f) of the Agreement, Frey agreed to the entry of injunctive relief enjoining him from breaching the Employment Agreement.

II. <u>DISCUSSION</u>[8]

In order for the Court to grant a preliminary injunction, the party seeking the injunction must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." <u>Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.</u>, 589 F.3d 30, 35 (2d Cir. 2010) ("For the last five decades, this circuit" has required this showing on a preliminary injunction) (quoting <u>Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.</u>, 596 F.2d 70, 72 (2d Cir. 1979)); <u>Federal Express Corp. v. Federal Espresso, Inc.</u>, 201 F.3d 168, 173 (2d Cir. 2000); <u>see also</u> <u>Branson Ultrasonics Corp. v. Stratman</u>, 921 F. Supp. 909 (D. Conn. 1996).[9] "A movant need not show that success is an absolute certainty. He need only make a

_____

[8]The Court has subject matter jurisdiction based on diversity of citizenship. Agreement §5(a). Connecticut law applies. <u>Id.</u> 9(g). "The question of whether a preliminary injunction should be granted is generally one of federal law even in diversity actions, though state law issues are sometimes relevant to the decision to grant or deny." <u>Baker's Aid v. Hussman</u>, 830 F.2d 13, 15 (2d Cir. 1987).

[9]The Court rejects defendant's argument that the standard for a preliminary injunction requires that plaintiff prove three elements: "(1) irreparable harm; (2)likelihood of success on the merits, or the existence of a sufficiently serious question on the merits; <u>and</u> (3) the balance of hardships tipping in its favor." [Doc. #35 at 2].

showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." United Rentals v. Bastanzi, No. 3:05CV596(RNC), 2005 WL 5543590, n.6 (Dec. 22, 2005)

1.    Likelihood of Success on the Merits

United's breach of contract claim alleges that Frey violated the non-compete and confidentiality obligations contained in the Agreement. Compl. Count One.  "The elements of a breach of contract claim are: (1) the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach." Bastanzi, 2005 WL 5543590, at *4  (citing Chem-Tek, Inc. v. Gen. Motors Corp., 816 F. Supp. 123, 131 (D. Conn. 1993) (citing O'Hara v. State, 218 Conn. 628 (1991))).

Frey argues that the Employment Agreement is unenforceable because the restrictive covenants are overly broad and unenforceable. Defendant asserts that the "restrictive covenant prevents Mr. Frey from working for a person or entity that rents or sells equipment or merchandise of any kind to the commercial or general public." [Doc. #35]. Before the Court reaches the question of whether the Agreement has been breached, it must consider whether the Agreement is enforceable.[10]   Defendant

_____

[10]At the hearing, Frey testified that he was not provided adequate time to consider the Employment Agreement or legal counsel before commencing his employment with United. Defendant bears the burden of proving duress.  United Rentals, Inc. v. Bastanzi, No. 3:05CV596(RNC), 2005 WL 5543590, at *5 (Dec. 22,

11

bears the burden of proof on this claim. <u>Merryfield Animal Hosp.</u>
<u>v. Mackay</u>, No. CV020464586S, 2002 WL 31000298, at *3 (Conn.
Super. Ct. July 31, 2002) ("The defendant, who claims that the
noncompete clause is unenforceable, has the burden of proof.");
<u>Scott v. General Iron & Welding Co., Inc.</u>, 171 Conn. 132, 138
(1976) (same).

The Court rejects defendant's argument, instead giving the
Agreement a reasonable interpretation in light of the facts and
circumstances in this case. As set forth below, the Court
believes that Section 3(a)and (b) restricts the scope of the
Agreement to the former employee's (1) company location, 2)
performance of services, and 3)"management or sales
responsibilities" engaged in on behalf of United.  The Agreement
also states that,  "The Courts enforcing this Agreement shall be
entitled to modify the duration and scope of any restriction
contained here in to the extent such restriction would otherwise
be unenforceable, and such restriction as modified shall be
enforced."  Agreement §3(g).

--------------------------------------------

2005). Aside from alleging these facts in his affidavit and in
his testimony, Frey did not brief this claim in his opposition
brief or post-hearing brief and defendant has not provided
evidence of duress. Indeed, Frey admitted that he never raised
any objection prior to signing the Agreement and did not request
additional time to consult with an attorney before commencing his
employment.

<u>Reasonableness of the Non-Compete</u>

Under Connecticut law, "[a] covenant that restricts the activities of an employee following the termination of his employment is valid and enforceable if the restraint is reasonable." <u>New Haven Tobacco Co. v. Perrelli</u>, 18 Conn. App. 531, 533 (1989). In determining whether a covenant is reasonable, the court considers: "(1) the length of time the restriction operates; (2) the geographical area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." <u>Robert S. Weiss & Associates, Inc. v. Wiederlight</u>, 208 Conn. 525, 529, n. 2 (1988). This test is "disjunctive, rather than conjunctive; a finding of unreasonableness in any one of the criteria is enough to render the covenant unenforceable." <u>New Haven Tobacco Co.</u>, 18 Conn. App. at 534.

As to the first factor, the length of time the restriction is in effect, §3(a) of the Agreement contains a time limitation of 12 months. The defendant does not dispute that the temporal restriction of one year is reasonable. The Court finds that a one year prohibition is reasonable. <u>See</u> <u>Robert S. Weiss</u>, 208 Conn. at 531-32 (1988) (and cases cited therein); <u>United Rentals, Inc. v. Bastanzi</u>, No. 3:05CV596(RNC), 2005 WL 5543590, at *7 (Dec. 22, 2005) (one year restriction found reasonable).

13

The geographic scope is also reasonable. The restricted area is "any geographic area for which [Frey] had management or sales responsibilities at any time during the 24 month period immediately preceding the termination of [Frey's] employment with [United's Indianapolis branch]."[11] Agreement §3(a)(i)(B). This area encompassed most of the state of Indiana. Pl. Ex. 10. An employer can protect its business in the area where it does business. See Robert S. Weiss & Associates v. Wiederlight, 208 Conn. 525, 533 (1988); Scott v. General Iron & Welding Co., Inc., 171 Conn. 132, 138 (1976) ("The general rule is that the application of a restrictive covenant will be confined to a geographical area which is reasonable in view of the particular situation."); Bastanzi, 2005 WL 5543590, at *7 (finding 75 mile radius of Gainesville, Florida branch "accurately captures the market serviced by the plaintiff and thus is precisely drawn to protect its goodwill."); see also Musto v. Opticare Eye Health Centers, Inc., No. CV9900155663S, 2000 WL 1337676, at *4 (Conn. Super. Ct. Aug. 9, 2000) (upholding geographic scope where record demonstrated that plaintiff does business in geographic area defined by restrictive covenant). "Given the nature of the plaintiff's customer-driven business, it is reasonable for it to

_____

[11]The parties agreed that this geographic area was larger then the "50 mile radius from any and all company locations for which [Frey] performed services, or had management or sales responsibilities . . . ." Agreement §3(a)(i)(A).

14

be concerned that an employee with extensive relationships with its customers, such as the plaintiff, might be in a position to threaten its business if the employee works for a competitor." Bastanzi, 2005 WL 5543590, at *7 (citing Elizabeth Grady Face First, Inc. v. Escavich, 321 F. Supp. 2d 420, 427 (D. Conn. 2004) (concluding "twenty-five mile radius covers a range of territory reasonably necessary for the protection of Elizabeth Grady's goodwill and its investment in its customers.")).

As for the third factor, defendant argues that the Agreement unfairly protects United because competition is not limited to the trench safety business conducted by United's Indianapolis branch. Defendant argues that the Agreement restricts Frey from employment in any business competitive with United nationally and internationally and restricts Frey from selling any product also sold by United. [Doc. #35 at 5-6]. As previously stated, the Court does not accord the agreement this broad reading. Interpretation of these contract provisions is guided by well established principles of contract law.

> A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction . . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract . . . . Where

> the language of the contract is clear and
> unambiguous, the contract is to be given
> effect according to its terms. A court will
> not torture words to import ambiguity where
> the ordinary meaning leaves no room for
> ambiguity . . . . Similarly, any ambiguity in
> a contract must emanate from the language
> used in the contract rather than from one
> party's subjective perception of the terms.
> Lawson v. Whitey's Frame Shop, 241 Conn. 678,
> 686 (1997). (Internal quotation marks
> omitted.)

Pesino v. Atlantic Bank of New York, 244 Conn 85, 91-92 (1998).

Specifically, Section 3 of the Agreement contains precise language limiting the contours of the non-compete. The "restricted area" is clearly confined to the location where Frey performed his services or sales responsibilities while employed at United "at any time during the 24 month period immediately preceding the termination of [Frey's] employment with the Company." [Agreement §3(a)(i)(B)]. Similarly, the solicitation prohibition is clearly confined to customers Frey solicited, called on, who had a business relationship with United or were a prospect for a business relationship "at any time during the period of [Frey's] employment" for "the purposes of providing or obtaining any product or service reasonably deemed competitive with any product or service then offered by the Company." [Agreement §3(a)(ii)].

Defendant focuses on the fourth factor, taking an expansive and hypothetical interpretation of the Agreement, arguing that the covenant is an unreasonable restraint on his opportunity to

16

pursue his occupation.  The record establishes that MacAllister

approached Frey with a job offer and that Frey made no attempt to

search for a job in a field or location that would not violate

the Agreement. Frey testified that MacAllister is a direct

competitor of United in trench shoring business in the very same

sales territory.   By its very nature, a restrictive covenant

affects a defendant's opportunity to pursue his occupation.

However, this one does not do so unreasonably. See Scott v.

General Iron & Welding Co., 171 Conn. 132 (1976) (court enforced

5-year, statewide prohibition on competition against former

manager of wielding and metal fabrication company). Here, there

is no evidence that the  covenant deprives Frey of the ability to

earn a living. He may not compete with United's Indianapolis

trench shoring business within the territory he previously

serviced for twelve months.

> Although the scope of restrictions imposed by
> the restrictive covenant taken literally are
> extremely broad, the plaintiff actually is
> seeking only to enjoin the defendant from
> competing in its own industry . . . . It
> further requests that the defendant be
> prohibited from soliciting any person who,
> prior to defendant's termination with
> plaintiff was a client or candidate. This,
> the court deems reasonable and not unduly
> restrictive.

Grayling Assoc. v. Villota, No. CV040833521, 2004 WL 1784388, at

*2 (Conn. Super. Ct. July 12, 2004) (citing Robert S. Weiss &

Assocs. v. Wiederlight, 208 Conn. 525, 531-33 (1988)).  Moreover,

the Court declines to speculate, as defendant seemed to invite at the hearing, whether the Agreement would be enforceable if defendant were working in another field or location. Schoonmaker v. Cummings and Lockwood of Connecticut, P.C., 252 Conn 416, 458-59 (2000) ("In considering the validity of noncompetition clauses in other contexts, this court repeatedly has observed that their validity is to be determined, not by the language in which they are couched, but by a factual inquiry into whether they are reasonably limited and fairly protect the interests of both parties.").

Finally, there is no evidence that enforcement of this covenant will harm the public interest.

Accordingly, the Court finds that there is an enforceable Agreement between the parties, satisfying the first element of a breach of contract claim. The next two elements plaintiff must establish on its breach of contract claim are: defendant's breach of contract and damages resulting from the breach. Bastanzi, 2005 WL 5543590, at *4 (citing Chem-Tek, Inc. v. Gen. Motors Corp., 816 F. Supp. 123, 131 (D. Conn. 1993) (citing O'Hara v. State, 218 Conn. 628 (1991)).

The evidence establishes that Frey breached the Employment Agreement with United. Martin v. Dupont Flooring Systems, Inc., No. 3:01CV2189 (SRU), 2004 WL 726903, at *3 (D. Conn. Mar. 31, 2004) (Breach of contract is an "unjustified failure to perform

all or any part of what is promised in a contract."). As already
stated, MacAllister is a direct competitor of United's
Indianapolis branch's trench shoring business. MacAllister's
recruitment of Frey was deliberate. MacAllister valued the
connections and experience Frey gained as a trench shoring sales
person in the Indianapolis market through his employment with
United. Frey does not dispute that he is competing within the
"Restricted Area" as defined in the Employment Agreement,
soliciting United's customers, suppliers and employees and using
United's "confidential information" and "trade secrets" as
defined in the Employment Agreement.[12] [Pl. Ex. 10, 13-14, 18-21,
23]. Frey testified that he will continue to call on United's
customers and vendors to solicit business for MacAllister.

Finally, Frey's continued employment with MacAllister will
continue to damage United's trench shoring business in the
Indianapolis branch area. The evidence clearly shows that Frey
knows the identity of United's trench shoring customers and
suppliers, United's prices and pricing methods and United
products and services. He knows details of United's business,
learned from his time on the job since December 2007. Frey does
not dispute that, while employed by United, he learned
confidential information that should not be disclosed to a

---

[12]Defendant initially testified that in his view there are
not trade secrets or confidential information in the trench
shoring business, which was contradicted by later testimony.

competitor.  On this record, the Court finds that it Frey has and will continue to disclose confidential information either intentionally or inadvertently in his position at MacAllister. What Frey knows about United is bound to influence what he does for MacAllister and, to the extent it does, United will be disadvantaged. See Weseley Software Dev. Corp. v. Burdette, 977 F. Supp. 137, 147 (D. Conn. 1997) (citations omitted)("the harm to the plaintiff cannot be avoided simply by the former employee's intention not to disclose confidential information, or even by his scrupulous efforts to avoid disclosure."). The Court finds that plaintiff has shown likelihood of success on its breach of contract claim.

2.   Irreparable Harm

Enforcement of the Agreement is necessary to prevent irreparable harm.  "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." Tom Doherty Assocs., Inc. d/b/a Tor Books v. Saban Entertainment, Inc., 60 F.3d 27, 37 (2d Cir. 1995) (internal quotations and citation omitted).  As set forth above, Frey is violating the Agreement and continues to do so in his employment with MacAllister.

"In cases such as this, involving a person competing with his former employer, particularly when such activity is prohibited by a restrictive covenant or is facilitated by the

misappropriation of trade secrets or customer information, courts have often taken a somewhat relaxed approach to the irreparable harm inquiry, and in certain circumstances have found it appropriate to presume the existence of such an injury." Innoviant Pharmacy, Inc. v. Morganstern, 390 F. Supp. 2d 179, 188 (N.D.N.Y. 2005). "A number of Connecticut courts and courts in this district have held that irreparable harm may be assumed in cases where the plaintiff alleges a breach of a restrictive covenant." Bastanzi, 2005 WL 5543590, at *8 (citing cases). This is because "when a party violates a non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm." Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc., 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004). In addition, a presumption of irreparable injury is appropriate and justified "when the plaintiff establishes that the defendant is in possession of his former employer's confidential information when he accepts employment with a competitor. This is because the employee is likely, even inadvertently, to disclose his former employer's trade secrets such as pricing and profit structure or future prototypes during the course of his new employment." Vbrick Systems, Inc. v. Stephens, 3:08-cv-1979 (CFD), 2009 WL 1491489, at *8 (D. Conn. May 27, 2009) (citing Lumex, Inc. v. Highsmith, 919 F. Supp. 624, 631 (E.D.N.Y. 1996). See also Pepsico, Inc. v.

Redmond, 54 F.3d 1262, 1269 (7th Cir. 1995) ("a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets.")).

In fact, Frey acknowledged in the Agreement that in the event of his breach of the non-compete provision, United is entitled to injunctive relief, because the breach would cause irreparable damage. See Agreement §3(f). "This acknowledgment, if not an admission, is at least evidence and a recognition of the reality that money damages are not sufficient to remedy the loss." Bastanzi, 2005 WL 5543590, at *8 (citing Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68 (2d Cir. 1999) (finding that such a provision "might arguably be viewed as an admission by [the defendant] that plaintiff will suffer irreparable harm were he to breach the contract's non-compete provision.")).

In this case, United has established that Frey possesses confidential information that would not otherwise be readily available to MacAllister and that Frey is soliciting and marketing to United's customers. It appears that MacAllister recruited Frey because of the knowledge and experience he gained while employed by United. Indeed, during the first week of his employment with MacAllister, Frey was asked to identify his "best" United customers and MacAllister assigned those customers to Frey. Frey proceeded to contact United's customers and at

least one vendor to solicit their business for MacAllister. Frey
candidly testified that information on customers, rate card,
bidding, margins, pricing, installation, and inventory should not
be disclosed to a competitor. This acknowledgment is especially
troubling in light of the evidence that all the information Frey
possessed regarding the trench shoring market in the Indianapolis
sales territory was gained during his employment with United.[13]
Frey is a salesman who had no prior experience in trench shoring
before his employment with United.  He became conversant in
United's products, customers, vendors, training programs and
sales approach. Given that the two companies compete in the
trench shoring business in the restricted area, and based on the
consequent loss of business from existing customers and the
acknowledgment by the defendant that remedies at law would be
inadequate, the plaintiff has adduced sufficient evidence of
irreparable harm to justify the issuance of an injunction.

---

[13]Prior to his employment with United, Frey worked for R.L.
Turner Corporation in business development; Smith & Nephew
Orthopaedics as Associate Account Manager; and Otto's Parking
Marking, as a Sales Representative and Scheduling Director. [Pl.
Ex. 5].

III.  CONCLUSION

For the foregoing reasons, United Rental's Motion for Preliminary Injunction **[Doc. #10]** is **GRANTED**.  The injunction shall be in effect for one year from the date of this ruling. <u>See</u> Agreement, Pl. Ex. 6, §3(a).

IT IS HEREBY ORDERED that the defendant, Evan Frey, is enjoined as follows and therefore shall not:

(A)  directly or indirectly disclose or otherwise use any of plaintiff's Trade Secrets or Confidential Information, as defined and described in Section 2 of the Agreement between plaintiff and defendant for any purpose whatsoever.

(B)  directly or indirectly (whether through affiliates, relatives or otherwise)

(i)  in the Restricted Area[14] be employed, retained, or otherwise provide any consulting, brokerage, contracting, sales, financial or other services or assistance to any person or entity who or which then competes with United in the trench shoring business;

(ii)  solicit the business of, or call upon, any person or entity who was a trench shoring Customer[15] of United's Indianapolis branch during Frey's employment there;

---

[14]The "restricted area" is any geographic area for which Frey had management or sales responsibilities at any time during the 24 month period immediately preceding the termination of Frey's employment with United's Indianapolis branch.  Agreement §3(a)(i)(B).

[15]For purposes of this Order, "United Customer" shall mean (A) a trench shoring customer, supplier or vendor who had a business relation with United's Indianapolis branch or who was a prospect for a business relationship with United's Indianapolis branch at any time during the period of Frey's employment, and/or (B) an affiliate of such person or entity.

(iii) approve, solicit or retain, or discuss the employment or retention of any person who was an employee of United's Indianapolis branch at any time during the one-year period preceding the termination of Frey's employment;

(iv) solicit or encourage any person to leave the employ of United's Indianapolis branch;

(v) own any interest in or be employed by or provide any services to any person or entity which engages in any conduct which is prohibited to Frey under this Order.

For purposes of this Order, the defendant will be deemed to be employed or retained in the Restricted Area if he has an office in the Restricted Area or if he performs any duties or renders any advice with respect to any facility or business activities in the Restricted Area. This includes, but is not limited to, defendant's current employer, MacAllister Machinery Co., Inc.

IT IS FURTHER ORDERED that no bond be required, as agreed to by the parties in Section 3(f) of the Agreement.

This is not a recommended ruling.  The parties consented to proceed before a United States Magistrate Judge [Doc. #33] on February 9, 2011, with appeal to the Court of Appeals.

Dated at Bridgeport, this 17th day of February 2011.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE