```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

                              :
UNITED RENTALS, INC. and      :
UNITED RENTALS (NORTH         :
AMERICA), INC.,               :
                              :
v.                            :   CIV. NO. 3:10-cv-1628 (HBF)
                              :
EVAN FREY.                    :
                              :
                              :
```

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO STRIKE

Plaintiffs United Rentals, Inc. and United Rentals (North America), Inc., brought this suit against a former employee, Evan Frey, on October 15, 2010, alleging willful breach of confidentiality and non-compete provisions contained in Frey's employment agreement. The Complaint sets forth claims for breach of contract, violation of the Connecticut Uniform Trade Secrets Act, and tortious interference with economic advantage and existing business relationships. United seeks a ruling for partial summary judgment as to Count I, the breach of contract claim. United has also sought a ruling on a motion to strike in connection with the request for summary judgment.

For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment **[Doc. #66]** is **DENIED** and Plaintiff's Motion to Strike **[Doc. #75]** is **DENIED**.

1

I.  **STANDARD OF REVIEW**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When a party asserts that a fact cannot be or is genuinely disputed, the assertion must be supported by citing to evidence in the record, or by showing that the materials cited do not or cannot establish the absence or presence of a dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B).

When, the movant bears the burden of proving the material facts, they must show that there is no genuine dispute as to those facts.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]."  Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (internal quotation marks omitted).  Once the movant has met this burden, the nonmoving party must "set forth specific facts showing that there is a genuine [dispute] for trial."  Anderson, 477 U.S. at 256.

When reviewing the record, the court resolves all ambiguities and draws all inferences in favor of the party against whom summary judgment is sought.  Patterson v. Cnty. of

2

Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (citing Anderson, 477 U.S. at 255).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

## II.  FACTS

The Plaintiff and Defendant submitted Local Rule 56(a)(1) **[Doc. #68]** and Local Rule 56(a)(2) **[Doc. #74-1]** Statements, respectively.  From those documents the Court finds the undisputed facts as follows.

### A.  Background

United Rentals, Inc. and United Rentals (North America), Inc. (collectively, "United"), are Delaware corporations with their principal places of business in Greenwich, Connecticut.  United is engaged in the business of renting and selling equipment and merchandise to the commercial and general public throughout the United States, including Indiana.

United maintains a branch at 1725 Whales Avenue, Indianapolis, Indiana ("Indianapolis Branch").  The Indianapolis Branch rents and sells, among other things, trench shoring equipment.  The Indianapolis Branch generates revenue from the rental of trench safety equipment to customers in Indianapolis and within at least a 50-mile radius of that area.

Upon commencing his employment with United, Evan Frey entered into an employment agreement with United, dated December 17, 2007. Throughout the majority of his employment with United, Frey was the sole Outside Sales Representative for the Indianapolis Branch and serviced territory that included the state of Indiana (excluding a small portion in the northwest corner), as well as a section of Kentucky.

Prior to commencing his employment at United, Frey had no experience selling or renting trench shoring products. United provided Frey with training to allow him to carry out his duties as an Outside Sales Representative. United also provided Frey with password protected access to customer and contact information through its protected computer system.

Frey resigned from his position at United on October 6, 2010, and immediately commenced employment with MacAllister Machinery Equipment, Inc., a direct competitor of United in the trench shoring industry. Frey left United for the purpose of accepting employment with MacAllister, and provided services for a MacAllister facility less than ten (10) miles from the Indianapolis Branch.

Frey's job responsibilities were substantially similar to those he had at United, and he competed with United within the Restricted Area defined in the United employment agreement. While at MacAllister, Frey contacted and solicited United

customers on behalf of MacAllister.  Further, Frey quoted United customers for similar equipment on the same jobs he had quoted those customers while employed at United.

Prior to the preliminary injunction hearing on February 9, 2011, before this Court, Frey had issued at least 34 quotes to entities that were either prospective or actual United customers within the meaning of the United Agreement.  After starting his employment at MacAllister, Frey disclosed a list of his "best customers" from United and, as a result, was assigned responsibility for these customers, even if the customer was located outside Frey's sales territory or was already assigned to another MacAllister sales representative.

Frey also solicited, encouraged, and/or discussed the employment or retention of Kyle Waller, a United employee, for the benefit of MacAllister.  Additionally, Frey solicited and/or called upon United suppliers.  As of the preliminary injunction hearing, Frey did not dispute that he planned to continue competing with United within the Restricted Area.  Until the issuance of the Preliminary Injunction **[Doc. #36]**, the existence of the non-compete clause in Frey's Agreement with United in no way inhibited Frey from contacting customers, regardless of whether the customer was in the Restricted Area, and regardless of whether it was a United customer.

Following the issuance of the Preliminary Injunction **[Doc. #36]**, on February 18, 2011, Frey continued to receive bi-weekly paychecks and bonus payments from MacAllister until April 22, 2011. Frey received a $10,000 bonus from MacAllister for the completion of certain objectives after January 1, 2011. Frey continued to use his MacAllister issued cellular phone and laptop computer after February 18, 2011. Frey also continued to have email and VPN access after February 18, 2011. Additionally, Frey maintained contact with MacAllister personnel by telephone and text message after February 18, 2011.

In April 2011, Frey became employed by Michigan CAT, a company that, like MacAllister, is owned by Chris MacAllister.

### B. Employment Agreement

The Plaintiff's Motion for Partial Summary Judgment seeks judgment on Count I of the Complaint. Count I details a breach of contract claim for violations of provisions of the Agreement between Frey and United, relating to the non-compete and the confidential information and/or trade secrets provisions. These provisions of the Agreement read as follows:

> 2. <u>Trade Secrets: Confidentiality and Company Property</u>. During and at all times after Employee's employment with the Company:
>    (a) Employee will not disclose to any person or entity, without the Company's prior written consent, any Trade Secrets or other Confidential Information (as defined below). . . ;

6

(b) Employee will not use any Trade Secrets or other Confidential Information in order to solicit or call upon any person or entity;

(c) Employee will not directly or indirectly use any Trade Secrets or other Confidential Information other than as directed by the Company in writing;

(d) Employee will not, except in the furtherance of the business of the Company, remove any Trade Secrets or other Confidential Information from the premises of the Company without prior written consent of the Company;

(e) All products, correspondence, reports, records, charts, advertising materials, designs, plans, manuals, field guides, memoranda, lists and other property compiled or produced by Employee or delivered to Employee by or on behalf of the Company or by its customers . . . , whether or not Confidential Information, shall be and remain the property of the Company and shall be subject at all times to its direction and control;

(f) Upon termination of employment for any reason . . . , or upon request . . . , Employee will promptly deliver to the Company all originals and copies . . . of all Trade Secrets or other Confidential Information, and all property identified in Section 2(e) above, that is in Employee's possession . . . or control . . . ;

(g) "Trade Secrets" shall mean all information not generally known about the business of the Company, which is subject to reasonable efforts to maintain its secrecy or confidentiality, and from which the Company derives economic value from the fact that the information is not generally known to others who may obtain economic value from its disclosure or use, regardless of whether such information is specifically designated as a trade secret, and regardless of whether such information may be protected as a trade secret under any applicable law.

(h) "Confidential Information" shall mean all information which is valuable to the Company and not generally known to the public, and includes, but is not limited to:

7

      (i)  business, strategic and marketing plans and forecasts, and the past results of such plans and forecasts;
      (ii) business, pricing and management methods;
      . . .
      (iv) finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;
      (v)  names of arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;
      (vi) technical information, work product and know-how;
      (vii) cost, operating, and other management information systems, and other software and programming;
      . . .
      (ix) the Company's Trade Secrets (note that some of the information listed above may also be a Trade Secret).
3. <u>Non-Compete Provisions</u>. . . .
  (a) During Employee's employment by the Company and for a period of 12 months immediately following the termination of employment for any reason . . . Employee will not, directly or indirectly:
    (i)  in any Restricted Area, be employed, retained, or otherwise provide any consulting, brokerage, contracting, sales, financial or other services or assistance to any person or entity who or which then competes with the Company to any extent.  For purposes of this Agreement, the term "Restricted Area" shall mean the area within:
      (A)  a 50 mile radius from any and all Company locations for which Employee performed services, or had management or sales responsibilities, at any time during the 24 month period immediately preceding the termination of Employee's employment with the company; and
      (B)  any geographic area for which Employee had management or sales responsibilities at

8

>   > any time during the 24 month period immediately preceding the termination of Employee's employment with the Company;
>   > (ii) solicit the business of, or call upon, any person or entity, who or which is or was a customer, supplier . . . or other person who had a business relationship with the Company or who was a prospect for a business relationship with the Company at any time during the period of Employee's employment, for the purposes of providing or obtaining any product or service reasonably deemed competitive with any product or service then offered by the Company;
>   > (iii) approve, solicit or retain, or discuss the employment or retention . . . of any person who was an employee of the Company at any time during the one-year period preceding the termination of Employee's employment by the Company;
>   > (iv) solicit or encourage any person to leave the employ of the Company;
>   > . . .
>   > (vi) own any interest in or be employed by or provide any services to any person or entity, which engages in any conduct, which is prohibited to Employee under this <u>Section 3(a)</u>.
>   (b) Employee shall be deemed to be employed or retained in the Restricted Area if Employee has an office in the Restricted Area or if Employee performs any duties or renders any advice with respect to any facility or business activities in the Restricted Area.
> . . .
>   (f) [T]he Company shall be entitled, among other remedies (i) to an injunction restraining any violation of this Agreement . . . by Employee . . . [and] (ii) to require Employee to hold in a constructive trust, account for and pay over to the Company all compensation and other benefits which Employee shall derive as a result of any action or omission which is a violation of any provision of this Agreement . . . .

**III. <u>DISCUSSION</u>**

United is seeking judgment on Count I of the Complaint, alleging that Frey breached provisions of the Agreement between United and Frey.  Specifically, Count I alleges that Frey breached his obligations under the confidentiality and non-compete provisions of the Agreement.

Under Connecticut law, the elements of a breach of contract claim are "[(1)] the formation of an agreement, [(2)] performance by one party, [(3)] breach of the agreement by the other party and [(4)] damages."  <u>FCM Group, Inc. v. Miller</u>, 300 Conn. 774, 798 (2011) (internal quotations and citations omitted).

**A.    FORMATION**

Neither party disputes the existence of the Agreement, nor that it contains the relevant provisions pertaining to non-competition and the use of confidential information and/or trade secrets.  In terms of formation, the only dispute is whether the non-compete provision of the Agreement is enforceable as a reasonable restraint on employment.

"A covenant that restricts the activities of an employee following the termination of his employment is valid and enforceable if the restraint is reasonable."  <u>New Haven Tobacco Co. v. Perrelli</u>, 18 Conn. App. 531, 533 (1989).  In determining whether a covenant is reasonable, the court considers: "(1) the length of time the restriction operates; (2) the geographical

area covered; (3) the fairness of the protection accorded to the employer; (4) the extent of the restraint on the employee's opportunity to pursue his occupation; and (5) the extent of interference with the public's interests." Robert S. Weiss & Associates, Inc. v. Wiederlight, 208 Conn. 525, 529 n. 2 (1988). This test is "disjunctive, rather than conjunctive; a finding of unreasonableness in any one criteria is enough to render the covenant unenforceable." New Haven Tobacco Co., 18 Conn. App. at 534.

This Court has already found that there was "an enforceable Agreement between the parties, satisfying the first element of [the] breach of contract claim." Ruling on Mot. for Prelim. Injunc. **[Doc. #36 at 18]**.[1] Defendant argues that the non-compete provision is overbroad and the Court should not engage in "blue penciling" under section 3(g) of the Agreement, to narrow the scope of the covenant not to compete. However, this Court never purported to modify the Agreement, but instead looked to its unambiguous language to determine the intent of the parties. See Tallmadge Bros., Inc. v. Iroqouis Gas Transmission Sys., L.P., 252 Conn. 479 (2000) ("Although ordinarily the question of

---

[1] In this Court's previous Ruling granting the Motion for Preliminary Injunction this Court made the following findings on the reasonableness of the non-compete provision in the Agreement: (1) the one year prohibition is reasonable, Ruling on Mot. for Prelim. Injunc. at 13; (2) the geographic scope is reasonable, id. at 14; (3) the Agreement fairly protects United as "the Agreement contains precise language limiting the contours of the non-compete," id. at 16; (4) "there is no evidence that the covenant deprives Frey of the ability to earn a living," id. at 17; and (5) "there is no evidence that enforcement of this covenant will harm the public interest," id. at 18.

11

contract interpretation, being a question of the parties' intent, is a question of fact . . . where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a matter of law."). As the covenant not to compete was deemed unambiguous on its face, there is no factual dispute regarding the intent of the parties.

### B. PERFORMANCE

Neither party disputes that United performed its obligations under the Agreement. As such, the second element of the breach of contract claim is deemed satisfied.

### C. BREACH

The third element of the breach of contract claim is the actual breach of the contract. United claims that there is no genuine dispute that Frey breached provisions of the Agreement during his employment with MacAllister, from October 6, 2010 through April 22, 2011, which includes periods of time before and after the issuance of the injunction on February 18, 2011.

#### 1. Pre-Injunction Breach

The undisputed facts show that the Frey breached a number of contractual provisions in the Agreement prior to the issuance of the preliminary injunction by this Court. These pre-injunction breaches of the Agreement are sufficient to satisfy the third element of a breach of contract claim and are set forth below.

### a.   Breach of the Non-Compete

Under the provisions of the non-compete, Frey agreed to not be employed by a competitor of United within the Restricted Area, an area encompassing a fifty (50) mile radius of the Indianapolis Branch and any area in which Frey had sales responsibilities in the 24 month period preceding his termination of employment with United.  The undisputed facts show Frey was employed by MacAllister, a direct competitor of United, during the period of October 6, 2010 through February 18, 2011, from a facility less than ten (10) miles from the Indianapolis Branch, in breach of the non-compete provision of the Agreement.

Further, the undisputed facts establish that Frey breached the non-compete at sections 3(a)(iii), (iv) of the Agreement by soliciting Kyle Waller, a one-time United employee, for the benefit of MacAllister, for whom Waller now works.

The undisputed facts also establish that Frey breached section 3(a)(ii) of the Agreement by soliciting or calling upon United suppliers for the benefit of MacAllister.  Frey also breached section 3(a)(ii) of the Agreement regarding the solicitation or calling upon of United customers.  Frey does not dispute the allegation that he did contact United customers on behalf of MacAllister, including providing quotes to United customers for MacAllister even though he had provided a quote for the same customer on the same project while employed at United.

### b.   Breach of Confidentiality

Frey also breached the confidentiality provision of section 2 of the Agreement.  Under section 2 of the Agreement, Frey was not to disclose any confidential information, which was defined to include "names of, arrangements with, or other information relating to, [United's] customers . . . ."

It is undisputed that Frey identified to MacAllister the identity of Frey's best customers while he was employed at United, and MacAllister subsequently assigned Frey to those customers.  This was a disclosure of confidential information in breach of section 2 of the Agreement.

### 2.   Post-Injunction Breach

United also alleges that Frey continued to breach the Agreement, from the issuance of the preliminary injunction on February 18, 2011, through Frey's departure from MacAllister on April 22, 2011.  In support of this claim, United cites to the undisputed facts that Frey continued to receive bi-weekly paychecks from MacAllister; that Frey received a $10,000 bonus payment during this period for completion of certain sales goals; that Frey continued to use his MacAllister issued laptop and cellular phone; and that Frey maintained contact with MacAllister employees via text message, email and telephone.  United alleges that this evidence amounts to an unfettered breach of the Agreement.

While all the facts relied upon by United are considered undisputed, in response to United's allegations, Frey submitted an affidavit in which he swears that, after the issuance of the preliminary injunction, he had no further job duties or responsibilities with MacAllister in the trench shoring business. Frey also submitted an affidavit signed by Jay Swearingen, the Rental Services Division Manager for MacAllister, in support of Frey's position that Frey did not breach the Agreement or violate the preliminary injunction after Frey became aware of its issuance. Frey contends that this creates a genuine dispute of material fact, precluding summary judgment.

United has filed a Motion to Strike **[Doc. #75]** the affidavit of Mr. Swearingen on the basis that he was not disclosed as a witness at the proper time.[2] Without deciding the merits of United's motion to strike, the Court is persuaded that the affidavit of Frey alone creates a genuine dispute of material fact with respect to whether Frey breached the Agreement during the period of February 18 through April 22, 2011.

United argues that Frey was receiving bi-weekly compensation as wages, presumably for the performance of services, and using MacAllister cellular phone and email, definitively showing that Frey continued to provide services to MacAllister during the relevant period. However, Frey's deposition testimony and his

---

[2] The Court will leave for another day any objection to Jay Swearingen's testimony at trial. Any objection should be made in a pre-trial motion.

affidavit are consistent, contending that he was receiving the bi-weekly paychecks as a de facto severance. If credited, this presents a genuine dispute for the trier of fact, and United's motion for summary judgment as to the period of February 18, 2011 through April 22, 2011 must be denied.

### D. DAMAGES

As the Court has found a breach of the Agreement with respect to the period of October 6, 2010 through February 18, 2011, the Court will also examine the issue of damages for this period alone. United alleges that the damages for this period are fixed by the Agreement in section 3(f), as a constructive trust to be imposed upon Frey for "all compensation and other benefits which [Frey] . . . derived as a result of any action or omission which is a violation of any provision of this Agreement." Because Frey's wages and bonuses for this period are identifiable, United believes it is entitled to receive them as damages under the Agreement.

Under the law of Connecticut, "[t]he proper measure of damages for breach of a covenant not to compete is the nonbreaching party's losses rather the breaching party's gains." Robert S. Weiss & Associates, Inc., 208 Conn. at 542 (citations omitted). In Robert S. Weiss & Associates, Inc., the Connecticut Supreme Court denied the plaintiff's effort to establish lost profits by simply referencing the fact that the defendant sold

16

commercial insurance in the restricted area during the covenant's operation.  Id.  "To permit the plaintiff to recover damages merely by proving that the defendant breached the covenant, however, would ignore the well established rule that damages are essential to the plaintiff's proof and must be shown with reasonable clarity."  Id. at 542-43 (citations omitted).

In this case, United has not established that the damages requested, Frey's gains resulting from his breach of the Agreement, are reasonably related to United's lost profits as a result of the breach.  For example, United has shown that Frey contacted and quoted United customers while working for MacAllister, and that Frey provided quotes to the same customers while working at United, but has provided no evidence that United lost the business of any of those customers as a result of Frey's actions.

While this Court did find that irreparable harm would likely occur absent injunctive relief, see Ruling on Mot. for Prelim. Injunc. at 20-23, the Court does not find that the irreparable harm necessary for a preliminary injunction automatically translates to actual monetary damages.  Cf. Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 37 (2d Cir. 1995) ("Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be

17

adequate compensation.") (internal quotations and citation omitted).

United also argues that establishing damages is not necessary to prevail on a breach on contract claim in Connecticut.  This Court recognizes that Connecticut courts will award nominal damages in breach of contract claims.  See <u>News America Marketing In-Store, Inc. v. Marquis</u>, 86 Conn. App. 527, 535 (2004) ("If a party has suffered no demonstrable harm . . . that party may be, however, entitled to nominal damages for breach of contract . . . ."), <u>aff'd</u>, 276 Conn. 310 (2005).  However, United seeks actual damages, not nominal damages, and has not offered any evidence to establish the existence of actual monetary damages sufficient to support a grant of summary judgment.

**IV. CONCLUSION**

Plaintiff's Motion for Partial Summary Judgment **[Doc. #66]** is **DENIED** and Plaintiff's Motion to Strike **[Doc. #75]** is also **DENIED.** This is **not** a recommended ruling. The parties consented to proceed before a United States Magistrate Judge **[Doc. #33]** and on February 9, 2011 this case was transferred to this Court for all purposes, including the entry of judgment.

SO ORDERED at Bridgeport this 21st day of March 2012.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE